## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-514-E |
| | § | |
| ALLURE JAZZ & CIGARS, LLC, | § | |
| ET AL., | § | |
| DEFENDANTS. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 37, *Plaintiff, Joe Hand Promotions, Inc.'s Opposed Motion for Default Judgment Against Defendant, Pride 37 LLC and Supporting Brief*, Doc. 34, is before the undersigned United States magistrate judge for findings and a recommended disposition. As detailed below, the motion should be **GRANTED.**

## I. BACKGROUND[1]

In March 2022, Plaintiff sued Defendants for satellite piracy, or alternatively cable piracy, in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 ("FCA"). Doc. 1, *passim*. Plaintiff distributes and licenses sporting events to commercial, non-residential establishments, such as bars and restaurants. Doc. 1 at 4. As relevant here, Plaintiff held the exclusive commercial distribution rights to the March 16, 2019 boxing match between Errol Spence, Jr. and Mikey Garcia, as well as all undercard bouts and commentary (the

---

[1] The Court accepts the well-pleaded allegations in Plaintiff's complaint as true. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

"Program").  Doc. 1 at 2.  Plaintiff sold the Program's distribution rights to its customers, who then could show it to their patrons.  Doc. 1 at 4.

Defendants are the owners, operators, members, or managers of the DeSoto, Texas business known as Allure Jazz and Cigar Lounge or Allure Jazz & Cigars (the "Establishment"). Doc. 1 at 2-4.  Defendants intercepted the Program and showed it to the Establishment's patrons without Plaintiff's authorization.  Doc. 1 at 5. Plaintiff thus seeks statutory damages, additional damages, attorneys' fees and court costs, and post-judgment interest.  Doc. 1 at 8.

Despite being served with a summons and copy of Plaintiff's complaint, Defendant Pride 37 LLC has not answered or otherwise appeared.  Doc. 15.  Upon Plaintiff's request, the Clerk of Court entered default against Pride.  Doc. 22; Doc. 24.  The Court then warned Plaintiff that it would dismiss Plaintiff's claims against Pride without prejudice unless Plaintiff moved for a default judgment.  Doc. 30.  Plaintiff now so moves and seeks $60,000.00 in damages plus attorneys' fees and costs. [2]  Doc. 34.

## II. APPLICABLE LAW

Under Federal Rule of Civil Procedure 55, a party seeking a default judgment must satisfy three steps: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment.  FED. R. CIV. P. 55; *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

---

[2] Though Plaintiff certified this motion as "opposed" based on the representations of Defendant Christopher Johnson a/k/a Chris Johnson's counsel, neither Johnson nor any other defendant has responded in opposition and the time to do so has passed, so the undersigned construes the motion as unopposed. *See Travelhost, Inc. v. Figg*, No. 3:11-cv-0455-D-BK, 2012 WL 13028929, at *1 (N.D. Tex. Mar. 29, 2012) (Toliver, J.) (presuming that a motion is unopposed due to a party's failure to timely respond).

2

Courts have discretion to determine the appropriateness of an entry of default judgment. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). First, the court considers whether a default judgment is procedurally warranted by examining the *Lindsey* factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Id.*

Second, the court evaluates whether the pleadings provide a sufficient basis for the judgment. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975). At this step, the court assumes only that the defaulting defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.*

Finally, the Court determines what relief, if any, the plaintiff should receive. *United States v. 1998 Freightliner Vin #:1FUYCZYB3WP886986*, 548 F.Supp.2d 381, 384 (W.D. Tex. 2008). The relief requested in the complaint limits the relief available by default judgment. FED. R. CIV. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Courts typically do not award damages without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam). But a hearing is unnecessary if the amount of damages can be determined through a mathematical calculation by referring to the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III. ANALYSIS

#### A. Default judgment is procedurally warranted.

The *Lindsey* factors favor granting default judgment here. Given Pride's failure to answer the allegations, no material issues of fact exist. Second, Pride's failure to answer Plaintiff's complaint or otherwise appear threatens to bring this case to a halt, which would substantially prejudice Plaintiff's interests. *Gandy v. Lynx Credit*, No. 3:14-CV-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. Dec. 3, 2014) (Boyle, J.) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are clearly established as well because Pride was properly served over a year ago and has neither filed an answer nor explained its reticence to do so. *Cf. Elite v. The KNR Grp.*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent a letter to the court explaining why he failed to appear). Fourth, the record reveals no evidence that Pride's silence is the result of good faith mistake or excusable neglect. Fifth, Plaintiff seeks only the relief that the FCA entitles it to, which mitigates the harshness of a default judgment. *Joe Hand Promotions, Inc. v. Mickey's Sports Bar & Grill, LLC*, No. 3:17-CV-1312-S-BK, 2018 WL 3039256, at *2 (N.D. Tex. May 8, 2018) (Toliver, J.) (citation omitted), *adopted by*, No. 3:17-CV-1312-S, 2018 WL 3038510 (N.D. Tex. June 19, 2018) (Scholer, J.). Last, the Court is unaware of any facts that would constitute "good cause" to set aside the default if challenged by Pride. Thus, default judgment is procedurally warranted.

**B.  The pleadings provide sufficient basis for default judgment.**

Plaintiff's well-pleaded allegations support entry of default judgment against Pride for violating Section 605 of the FCA.[3]  A person violates Section 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto."  47 U.S.C. § 605(a).  To prevail, Plaintiff must prove: (1) the Program was shown in Pride's commercial establishment, the Establishment; (2) without Plaintiff's authorization; and (3) Plaintiff was the exclusive licensee. See *J & J Sports Prods., Inc. v. Q Cafe, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *3 (N.D. Tex. Jan. 25, 2012) (Lindsay, J.).  The pleadings and evidence attached to the motion *sub judice* generally establish a violation of Section 605.  Doc. 1, *passim*; Doc. 35-2 (affidavit of Plaintiff's president, Joe Hand, Jr.); Doc. 35-4 (Plaintiff's Rate Card); Doc. 35-5 (affidavit of Plaintiff's investigator, William Hemphill).

But additional findings are required to specifically hold Pride liable.  *Joe Hand Promotions, Inc. v. Lucky Shot LLC*, No. 2:22-CV-113-Z-BR, 2022 WL 16557847, at *3 (N.D. Tex. Oct. 31, 2022) (Kacsmaryk, J.).  Plaintiff must show that Pride possessed: (1) the right and ability to supervise the unauthorized activities of the Establishment; and (2) an obvious and direct financial interest in those activities.  *Id.*  Plaintiff adequately alleges both prongs of this inquiry.  Doc. 1 at 3.  And competent evidence supports these allegations.  *See, e.g.*, Doc. 35-1

---

[3] Plaintiff sued Defendant for violating Section 605, or alternatively Section 553, of the FCA. Doc. 1 at 7.  But Plaintiff moved for default judgment only as to its claim under Section 605. Doc. 34 at 7.  Thus, the Court considers only whether the pleadings sufficiently support a violation of Section 605.

(showing Pride as managing member of Allure Jazz & Cigars, LLC at the time of the Program).

Thus, the alleged facts demonstrate that Pride violated Section 605.

    **C. Plaintiff is entitled to statutory damages, additional damages, and attorneys' fees and court costs, and post-judgment interest.**

Given its findings, the Court must determine whether damages can be calculated without a hearing. FED. R. CIV. P. 55(b)(2). Courts may do so if "the amount claimed is a liquidated sum or one capable of mathematical calculation," such as by referring to the pleadings and supporting documents. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *T–Mobile USA Inc. v. Shazia & Noushad Corp.*, No. CIV 3:08–cv–00341, 2009 WL 2003369, at *3 (N.D. Tex. July 10, 2009) (O'Connor, J.) (citation omitted). No hearing is necessary here, as Plaintiff's complaint and the evidence accompanying Plaintiff's motion provide a sufficient basis for the Court to calculate damages.

    **i.  Statutory Damages**

Plaintiff prays for $10,000.00 in statutory damages and supports this prayer with evidence including an affidavit from its president, Joe Hand, Jr., and one from its investigator, William Hemphill. Doc. 1 at 8; Doc. 34 at 19; Doc. 35-2; Doc. 35-5. Plaintiff urges that it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program, as well as the value of "business investment, business opportunities, reputation, and goodwill." Doc. 34 at 17 (citation and internal quotation marks omitted). Hand shared that unauthorized broadcasts erode Plaintiff's sales of its proprietary content, such as the Program. Doc. 35-2 at 2-3. And Hemphill estimates that the Establishment had a capacity of 30-40 people with around 30 people present upon his departure. Doc. 35-5 at 1. Per Plaintiff's Rate Card, it would have cost $1,200.00 for the Establishment to legally broadcast the Program. Doc. 34-4 at 1.

6

Upon establishing a violation of Section 605, the aggrieved party may choose to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff has elected the latter, which is an amount between $1,000.00 and $10,000.00 for each violation of subsection (a) of Section 605. *Id.* § 605(e)(3)(C)(i)(II). In assessing statutory damages under Section 605, courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing fee. *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No.3:16-CV-1889-M, 2017 WL 373478, at *3 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.). That said, piracy will remain undeterred unless its cost is "significantly higher" than that of a license. *Id.* (citation omitted).

Because around 30 people were present during the violation and the Program's licensing fee was $1,200, the Court finds Plaintiff's prayer for $10,000.00 in statutory damages unreasonable. Even so, $5,000.00 constitutes a reasonable award of statutory damages. *See, e.g.*, *2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *4 (finding that an award of $5,000.00 in statutory damages was reasonable, not the $10,000.00 requested, where 70 patrons were in the establishment at the time of the violation and the licensing fee would have been $1,300.00); *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (Boyle, J.) (finding the same where 85 to 125 patrons were in the establishment at the time of the violation and the licensing fee would have been between $1,100.00 and $1,200.00).

### ii.    Additional Damages

Plaintiff requests $50,000.00 in additional damages (five times its desired statutory damages award) based on Pride's "willful" conduct. Doc. 34 at 27. Plaintiff argues that the Program could not have been accessed innocently. Doc. 34 at 19. Plaintiff first points out that the Establishment advertised its showing of the Program on social media. Doc. 34 at 20; Doc.

35-7 at 1-2.  Patrons, including Hemphill, were charged also a $10.00 cover fee to enter and view the Program at the Establishment.  Doc. 34 at 20; Doc. 35-5 at 1.  Further, Plaintiff presents evidence of two other such violations at the Establishment while Pride owned, operated, or managed it.  Doc. 34 at 20.

If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damages awarded by an amount of not more than $100,000.00.  47 U.S.C. § 605(e)(3)(C)(ii).  Courts typically determine such damages by multiplying by three to five times the statutory damages awarded. *Alima*, 2014 WL 1632158, at *5.  Multiplying the statutory damages award by five is warranted for more egregious conduct, such as charging a cover fee or advertising the unlicensed broadcast. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5 (applying four times multiplier where the defendant charged a cover and showed the broadcast on nine screens); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 961 (E.D. Wisc. 2001) (applying five times multiplier where the defendant advertised the broadcast, charged a cover, and showed the broadcast on five television monitors).

Here, a multiplier of five is appropriate.  Though the Establishment featured the Program only on one screen, it charged a cover, advertised the Program, and constitutes a "repeat offender" based on the evidence of at least two other unauthorized showings of Plaintiff's programming.  Thus, Plaintiff should be awarded $25,000.00 in additional damages.

### iii.    Attorneys' Fees and Costs

Plaintiff requests attorneys' fees in the amount of $2,925.00 (11.7 hours at a rate of $250.00 per hour) and costs in the amount of $447.00 (the $402.00 filing fee plus $45.00 for

serving Pride).  Doc. 35-10 at 2-3, 5.  Plaintiff also seeks anticipatory attorneys' fees for post-trial or appellate work.  Doc. 35-10 at 5.

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). In the Fifth Circuit, that determination is a two-step process.  *Smith v. Acevedo*, 478 F. App'x. 116, 124 (5th Cir. 2012) (per curiam).  First, the court calculates the "lodestar," or the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  *Id.*  The court excludes time that is excessive, duplicative, or inadequately documented. *Id.*  After that, the court can adjust the amount based on the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Id.*  The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skills required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed of contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with client; and (12) awards in similar cases.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Plaintiff is entitled to the requested $2,925.00 in attorneys' fees.  In support, Plaintiff offers the affidavit of its attorney, Jamie King.  *See* Doc. 35-10.  Ms. King, a Texas-licensed attorney since 2004, has handled, or is handling, over 300 anti-piracy cases.  Doc. 35-10 at 1-2. This Court has previously awarded Ms. King fees at an hourly rate of $250.00 (the rate she requests here) in other similar cases. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5-6.  Given her ability, competence, and experience, the requested rate remains reasonable.  Ms. King also

attaches time records describing both the number of hours expended (11.7) and the work performed. Doc. 35-10 at 2-3. Based on a review of these records, the undersigned's experience in determining reasonable attorneys' fees based on time expended, and the fee awards in similar cases, the Court finds that 11.7 hours were reasonable and necessary for Plaintiff's counsel's work here. Accordingly, awarding $2,925.00 in such fees is proper.

Plaintiff also should be awarded its costs in the amount of $447.00, which equals the $402.00 filing fee and $45.00 for process serving fees. Doc. 35-10 at 5.

But because there is no indication that post-trial or appellate work will be necessary, Plaintiff should not be awarded anticipatory attorneys' fees for either. *See Joe Hand Promotions, Inc. v. City Slickers, LLC,* No. EP-21-CV-00222-FM, 2022 WL 1518937, at *5 (W.D. Tex. Apr. 1, 2022) (awarding no attorneys' fees for not-yet-performed post-trial and appellate work). If circumstances change, Plaintiff can move for additional fees.

### iv.    Post-Judgment Interest

Last, Plaintiff seeks post-judgment interest. Doc. 1 at 8; Doc. 34 at 25. Interest is allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961(a). "A district court has discretion to impose a . . . post-judgment interest award to make a plaintiff whole." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000) (per curiam). Given the undersigned's recommended award, Plaintiff will be harmed if Pride fails to diligently satisfy the judgment. Post-judgment interest will ensure that Plaintiff is made whole, so Plaintiff should be awarded the same according to Section 1961 *supra*.

## IV. CONCLUSION

For the above reasons, *Plaintiff, Joe Hand Promotions, Inc.'s Opposed Motion for Default Judgment Against Defendant, Pride 37 LLC and Supporting Brief*, Doc. 34, should be

**GRANTED.**  Default judgment should be entered against Pride, and Plaintiff should be awarded $33,372.00 ($5,000.00 in statutory damages; $25,000.00 in additional damages; $2,925.00 in attorneys' fees; and $447.00 in court costs), which will bear interest at the applicable federal legal rate from the date of entry of the judgment until it is paid in full.

      **SO RECOMMENDED** on October 4, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).